## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

BRANDEE COMPTON,

       Plaintiff,

v.

THE CITY OF PUEBLO,

       Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff, Brandee Compton, by and through her attorney, Rosemary Orsini of the law firm Berenbaum Weinshienk, PC, for her Complaint Jury Demand, states, alleges and avers as follows:

## PARTIES

1.    Plaintiff Brandee Compton (hereinafter Ms. Compton or "Plaintiff") is a citizen of the State of Colorado and resident of Pueblo County. Ms. Compton is female and a disabled veteran.

2.    Defendant the City of Pueblo, Colorado (hereinafter "Pueblo" or "Defendant") is a Colorado Home Rule Municipality in Pueblo County, Colorado.  The City of Pueblo carries out law enforcement activities through the Pueblo Police Department.

## JURISDICTION & VENUE

4.      Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because a federal question is involved, and § 1343 (original action).  This Court also has jurisdiction over the Title VII claims pursuant to 42 U.S.C. § 2000e-5 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to claims in the action that they form part of the same case or controversy.  In addition, this Court has jurisdiction pursuant to the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, *et. seq.*

6.      The Court has personal jurisdiction over the City of Pueblo because it is a municipal corporation and political subdivision of the State of Colorado.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(6) because the employment practices or omissions alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

8.      All procedural prerequisites for filing this suit have been met.  Plaintiff timely filed a Charge of Discrimination alleging sex discrimination, harassment, disability discrimination, and retaliation against Pueblo with the Equal Employment Opportunity Commission ("EEOC") and subsequently received a Notice of Right to Sue letter.  This Complaint and Jury Demand is being filed within 90 days of receiving the Notice of the Right to Sue from the EEOC.  Therefore, under 42 U.S.C. § 2000e-5(f)(1), Plaintiff has satisfied all procedural prerequisites for suing.

## GENERAL ALLEGATIONS

9.      Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

10.     Pueblo's Police Officers are members of the Union of the International Brotherhood of Police Officers Local 537 (the "Union").

11.     Ms. Compton was hired by the Pueblo Police Department in September of 1999 as a Patrol Officer.  In 2010, Ms. Compton was promoted to Corporal.  The rank of Corporal is given to Officers with the longest service to the Pueblo Police Department.

12.     Ms Compton was one of fewer than fifteen (15) female Police Officers when she commenced her employment as a Patrol Officer for Pueblo in 1999.

13.     During her employment, Ms. Compton also worked as a Police Training Officer, a School Resource Officer, an Honor Guard member, Domestic Violence coordinator, acted as a step-up, interim Sergeant; a Firearms Instructor, and as a part of the Child Abduction Response Team.

14.     On March 18, 2005, Ms. Compton filed a charge for sexual harassment with the EEOC against the Pueblo Police Department, specifically naming Deputy Chief (previously Captain) Michael Bennett.  The Pueblo Police Department was notified and responded to Ms. Compton's charge with the EEOC by attending mediation to resolve the charge.

15.     Currently, there are approximately 200 Police Officers employed by Pueblo's Police Department.  Of the 200 Police Officers, approximately 20 (or approximately 10%) are female.  Pueblo's Police Department has twenty-one (21) supervisory positions.  Of these 21 supervisory positions, only one is held by a female.

**Sergeant Position**

16.     In June 2014, Ms. Compton took the promotion exam for Sergeant.  She tied for second ranked candidate out of thirteen passing scores.

17.     Eligibility and the process for promotions within Pueblo's Police Department are governed by Pueblo's Collective Bargaining Agreement (herein after "CBA") with the Union.

18.     In July 2014, four Sergeant positions became open.  Because she was ranked second, Ms. Compton was entitled to an interview pursuant to the CBA.

19.     Three male Police Officers, Chief Luis Valdez, Deputy Chief Troy Davenport, Deputy Chief Michael Bennett, and one citizen interviewed candidates for the four open Sergeant positions in July 2014.

20.     When Ms. Compton learned that Deputy Chief Bennett was to sit on the panel, she brought her concerns to Deputy Chief McLaughlin.  McLaughlin advised her not to worry, and told her that Deputy Chief Bennett had *"learned his lesson."*

21.     The male candidate ranked first on the written test as well as the male candidate tying with Ms. Compton's score on the written test were both promoted to Sergeant.  The other two positions were awarded to a male candidate who scored fourth and a female candidate who scored fifth on the written test, and is married to SWAT Captain Charley Taylor.

22.     The male who scored fourth on the written test had less cross-training throughout the Police Department than Ms. Compton, and significantly less years of experience working at the Pueblo Police Department than Ms. Compton.

23.     The female who scored fifth on the written test also had less cross-training and very little experience as a Patrol Officer.

24.     At the time of her interview Ms. Compton had been a Police Officer for Pueblo for over fifteen (15) years, and over six years of supervisory experience as a business owner.

25.      Of the male candidates interviewed, Ms. Compton had the most experience in law enforcement and the most supervisory experience.

26.      Pueblo discriminated against Ms. Compton by denying her promotion to Sergeant based on her gender. Pueblo promoted males much less qualified than Ms. Compton to the open Sergeant positions that Ms. Compton had applied for.

27.      In August 2015, another Sergeant position became available. Pursuant to the CBA, Ms. Compton's s written test ranking remained valid. Of the candidates remaining after the July promotions, Ms. Compton's test score was first in rank.

28.      Pueblo again discriminated against Ms. Compton by denying her promotion to Sergeant based on her sex. Pueblo promoted a male Police Officer to the open Sergeant position that Ms. Compton had applied for who was much less qualified than Ms. Compton.

29.      Ms. Compton was not promoted to the available Sergeant position in retaliation for filing a claim for discrimination with the EEOC against Pueblo.

**Sex Discrimination/Harassment**

30.      In September 2014, Ms. Compton underwent hip reconstruction as a result of an on-duty injury.  While chasing and apprehending a fleeing suspect, Ms. Compton severely injured her hip and knee.  After a first knee surgery did not alleviate her pain, Ms. Compton underwent two hip surgeries to remedy her pain.  The second, more extensive surgery reshaped her bone and inserted a cadaver labrum in place of damaged tissue.  Additionally, Ms. Compton's hip flexor was clipped as a means to provide more mobility.

31.      On or about January 5, 2015 Ms. Compton returned to work on light duty with physical restrictions from her doctors.  She was assigned to work in Watch II Blue under

Sergeant Shelly Taylor ("Sergeant Taylor"), who was promoted in July 2014.  Sergeant Taylor is married to SWAT Captain, Charley Taylor.

32.     Upon Ms. Compton's return, Sergeant Taylor began to harass Ms. Compton, setting unrealistic goals, and inconsistent and unrealistic expectations that were either not applied to other employees who were not female or arbitrarily applied to Ms. Compton.

33.     For example, Sergeant Taylor promised Ms. Compton time to catch up on her 1500+ emails requiring follow up and four months of missed Daily Training Bulletins.  However, on Ms. Compton's second shift back, she was assigned to dispatch, and not given another chance to catch up on her missed emails and assignments.

34.     The Pueblo Police Department has no dress code for light duty Officers, yet Sergeant Taylor told Ms. Compton she could not wear a black knit collared ¾ zipper sweater with orange stripes down the sleeves with "Harley Davidson" in black letters  *because 'they' were cracking down*" on light duty uniforms.  Male Officers were not warned about their attire.

35.     Ms. Compton was required to attend extensive physical therapy as a part of her post-surgery recovery.  Although there was no Police Department policy requiring her to provide the date of her appointments to Sergeant Taylor, Sergeant Taylor demanded Ms. Compton provide her with a list of all of her upcoming physical therapy and other medical appointments.

36.     Despite being provided with a list of Ms. Compton's appointments, Sergeant Taylor would use her work-issued cell phone to incessantly call and text message Ms. Compton's personal cell phone during her appointments and question where she was.

37.     If Ms. Compton was away from her desk and did not respond immediately to Sergeant Taylor's text messages, Taylor would incessantly call Ms. Compton on her personal cell phone, even if she was in the restroom.

38.     In accordance with Police Department policy, Ms. Compton always updated her status either through the intra-department dispatch system ("dispatch system") when switching assignments or leaving her desk.  The system would reflect and communicate the whereabouts of any Officer.  Although Sergeant Taylor could easily access the dispatch system or cameras to see where Ms. Compton was, Sergeant Taylor would repeatedly text message and call Ms. Compton questioning her about her whereabouts.

39.     Sergeant Taylor would place Ms. Compton in dangerous situations contrary to Ms. Compton's light duty status.  For example, she assigned Ms. Compton to work in the lobby in direct contact with civilians. The lobby was open to the public, and there was always a risk for a possible altercation.

40.     Ms. Compton's light work duty specifically required she was not to be involved in altercations, as it may hinder her recovery.  In addition, Ms. Compton could not carry her utility belt or handgun due to her being right-handed, and her gun's position on her right hip.

41.     Ms. Compton's restrictions from her physicians required she take 10-15 minute breaks every one or two hours.   Because of Sergeant Taylor's constant harassment, Ms. Compton did not take these breaks for fear of further harassment from Sergeant Taylor.  Ms. Compton did not even take lunch breaks for fear that Sergeant Taylor would accuse her of not working.

42.     Ms. Compton was subjected to false and unsubstantiated claims of deficient job performance.  For example, Sergeant Taylor regularly criticized Ms. Compton for not taking enough calls or reports.  Yet, Ms. Compton took over one hundred reports in less than a month, significantly more than all other light duty Officers.  In addition, Sergeant Taylor said she had

received multiple complaints about Ms. Compton but always only provided vague comments and never provided Ms. Compton with details, despite Ms. Compton having asked for them.

43.    When Ms. Compton began to question why she was being treated differently than other male Officers, Sergeant Taylor increased the harassment by text messaging and calling more frequently, and even asking other employees to check up on Ms. Compton. She also threatened Ms. Compton's light duty status numerous times by threatening to revoke it. Ms. Compton had been placed on light duty by doctor's orders.

44.    On January 22, 2015, Ms. Compton attended required mask fit training. She updated the dispatch system to reflect she was at mask training. Even so, Sergeant Taylor showed up at the training to check up on Ms. Compton.

45.    After the training ended, Ms. Compton had a scheduled medical appointment and again updated the dispatch system to reflect she was at a medical appointment. Despite having updated the dispatch system and having provided the list of her appointments to Sergeant Taylor, Sergeant Taylor text messaged her on her personal cell phone and asked where she was. Less than ten (10) minutes after Ms. Compton's appointment had ended, Taylor texted her again asking when she was going to be back.

46.    When Ms. Compton returned from her medical appointment, she had an email from Sergeant Taylor. Sergeant Taylor informed Ms. Compton that she needed to know where she was at all times despite having previously provided Sergeant Taylor with a list of all of her scheduled physical therapy appointments and using the proper method of communication in accordance with Police Department policy. Sergeant Taylor instructed Ms. Compton that she needed to use her personal cell phone to text message or call her every time she stepped away from her desk. She also ordered Ms. Compton to bring paperwork from all of her appointments,

and again threatened to take away her light duty status telling her, "*You know we don't have to accommodate a light duty position for you right*?"

47.     Other male Officers on light duty did not have their status threatened, nor were they asked to provide paperwork from their medical appointments, or assigned to the lobby.

48.     Ms. Compton reported Sergeant Taylor's harassment to her Union Representative, Officer Adams, who advised her that Sergeant Taylor was looking for a way to write up Ms. Compton.

49.     Ms. Compton then complained to Captain Eric Bravo about Sergeant Taylor's harassment and the hostile work environment.  Captain Bravo agreed that some of Sergeant Taylor's actions were improper and unlawful.  Rather than investigate, he chalked the issues up to "*conflicting personalities.*"  He said that he would have a meeting the following Monday, January 26, 2015, with Ms. Compton and Sergeant Taylor.

50.     On January 26, 2015, Ms. Compton went to her scheduled medical appointment and asked the office to provide her with the documentation that Sergeant Taylor requested.  The office gave Ms. Compton a note stating she had an appointment she attended that day.

51.     Ms. Compton continued to provide Sergeant Taylor with confirmation of her attendance at her physical therapy and medical appointments.  Allegedly unsatisfied with these notes, Sergeant Taylor began demanding more detailed and legible notes from her doctor's office and accused Ms. Compton of not following orders.  Other male Officers on light duty that were supervised by Sergeant Taylor's were not required to provide any documentation to her from medical appointments.  Police Department policy required documentation from any medical appointment to be given to human resources.

52.     Sergeant Taylor's husband, Captain Charley Taylor began contacting Ms. Compton's workers compensation adjuster.  Sergeant Taylor and Captain Taylor's actions were solely to harass and discriminate against Ms. Compton, since Human Resources was in contact with Ms. Compton's medical providers.  Further, Captain Taylor was not in Ms. Compton's chain of command and therefore had no reason to be contacting Ms. Compton's workers compensation adjuster.

53.     No meeting occurred between Ms. Compton, Captain Bravo, and Sergeant Taylor on January 26, 2015.

54.     On January 27, 2015, Ms. Compton was assigned during roll call to the traffic area to assist a different sergeant.  While Ms. Compton was on an assigned phone call, Sergeant Taylor interrupted the call to tell her she was assigned to work out of the dispatch area.  While watching Ms. Compton gather her things to move to the dispatch area, Sergeant Taylor sent her a text message stating, "*R u finished.*"

55.     On another occasion, Ms. Compton had let Sergeant Taylor know she was leaving for a planned meeting with her Union attorney.  During her meeting, Sergeant Taylor text messaged Ms. Compton asking if she was done yet.  Although it was obvious that Ms. Compton had returned to work, Taylor once again text messaged Ms. Compton asking if she had returned.

56.     Although Ms. Compton logged her activities in the dispatch system like everyone else, Sergeant Taylor continued to text message and then call her when she did not receive an immediate response.

57.     It was clear to Ms. Compton that Sergeant Taylor was not going to stop the harassment, and that the Pueblo Police Department was not going to do anything to remedy the situation.

58.     Ms. Compton began experiencing physical pain and anxiety as a result of the constant harassment and disparate treatment by Sergeant Taylor and threats that she was going to take away her light duty assignment.  Ms. Compton felt unable to take breaks as instructed by her physician for fear of increased harassment by Sergeant Taylor.  Ms. Compton also suffered from diarrhea and nausea, even having to pull over to vomit on her way into work due to anxiety about the impending daily harassment.  One Police Officer asked Ms. Compton if she was alright and telling her she looked "*suicidal."*

59.      Ms. Compton, increasingly harassed and discriminated against by Sergeant Taylor, brought her concerns to Deputy Chief Troy Davenport. Deputy Chief Davenport denied the presence of a hostile environment, and said it was not harassment because it "*had to be sexual in nature.*"  No investigation took place.

60.     Deputy Chief Davenport did agree that the text messages and tone of Sergeant Taylor's emails were unnecessary.  He said he would speak to Sergeant Taylor that afternoon, and that Ms. Compton was not to communicate via text message to Sergeant Taylor anymore after that.  Deputy Chief Davenport also advised Ms. Compton that she did not have to give Sergeant Taylor documentation of her physical therapy or medical appointments.

61.     On January 29, 2015, Ms. Compton attended a hearing related to one of her cases in Denver.  Although Sergeant Taylor and other superiors in Ms. Compton's chain of command knew Ms. Compton was in attendance at the hearing, Sergeant Taylor text messaged Ms. Compton, and then called twice within five minutes when Ms. Compton did not respond.  Ms. Compton was later advised that Sergeant Taylor had contacted both dispatch and Captain Bravo asking where Ms. Compton was.

62.     That same day, after Ms. Compton had returned to the Police Department to continue her shift, a message was sent out which required Police Training Officers to come for a meeting.  Because Ms. Compton was and had been a trainer for a number of years, she changed her activity status on the dispatch system and went to the meeting.

63.     While in the meeting, Ms. Compton noticed Sergeant Taylor walk by and peek in the room multiple times.  Sergeant Taylor called Ms. Compton out of the meeting, and questioned why she was there.  Sergeant Taylor told Ms. Compton that the new Police Training Officer Sergeant did not have Ms. Compton on his list.

64.     On February 2, 2015, Ms. Compton began working in dispatch as assigned in roll call.  Although Sergeant Taylor was out in the field for training that day, she text messaged Ms. Compton (while she was at a therapy appointment), telling her she was reassigning her to the lobby.

65.     At her appointment, Ms. Compton's doctor advised that she had high blood pressure for the first time in her life.  He reiterated that Ms. Compton needed to avoid physical altercations, and to take 10-15 minute breaks every 1-2 hours.

66.     At approximately 7:00 p.m. that night, and not during Sergeant Taylor's scheduled shift, Ms. Compton received an email from Sergeant Taylor stating that she had received multiple complaints that Ms. Compton was not available and was nowhere to be found, and stated she and Ms. Compton would meet the next day to receive a new assignment.  Sergeant Taylor confirmed knowing that Ms. Compton had previously checked in with another Sergeant when she returned from her medical appointment because Sergeant Taylor was out of the station that day, *"even though you still haven't done so with me."*  The next day, Sergeant Taylor again falsely accused Ms. Compton of failing to perform her job duties and told her that she needed to

take on a stronger work load, even though Ms. Compton had completed nearly double the reports of similarly situated male Officers.

67.     Sergeant Taylor assigned Ms. Compton to a desk directly in front of her.  She then ordered Ms. Compton to tell her when and why she moved away from her desk, which was not required of other similarly situated male Officers.  Other similarly situated employees who worked with Taylor who were not female were not treated in this harsh manner.

68.     Other similarly situated male Officers would walk around the department freely, even chat with Sergeant Taylor for long periods of times about non-work related matters.  One light duty Officer was even jokingly called the '*hall monitor,*' because he was always walking around, talking and laughing to people.

69.     Sergeant Taylor would also hold Ms. Compton to different standards.  She would deny Ms. Compton's reports for minor issues, and then complain Ms. Compton did not turn around the reports fast enough.

70.     During a scheduled Union meeting, Sergeant Taylor text messaged and then called Ms. Compton ordering her back to her desk, and said she was not allowed to meet regarding Union matters while at work, even though other on duty Officers were in attendance.  Taylor told Ms. Compton she was only allowed thirty minutes for the meeting, and she was late.

71.     Sergeant Taylor would also loudly and publicly criticize Ms. Compton.  She referred to Ms. Compton as a '*cancer*' in the department. She also mocked Ms. Compton's injury telling her that her injury was not work-related and continued to threaten to take away her light duty status away, which would have forced Ms. Compton into retirement.  Sergeant Taylor told Ms. Compton she *"didn't give a shit"* about Ms. Compton's appointment.

72.     Even though Ms. Compton had repeatedly expressed her concerns about Sergeant Taylor's discrimination and harassment to supervisors, no action was taken.  After this latest harassment and discrimination by Sergeant Taylor, Ms. Compton requested an immediate transfer out of Sergeant Taylor's supervision.

73.     Although most transfers are accepted, Chief Velez said he could not move Ms. Compton at this time, and that this situation had deteriorated to *two women with their claws out.*

74.     Chief Velez also told Ms. Compton that light duty status is only justified for six months total throughout an Officer's career, and her status was set to expire on February 22, 2015.  Pueblo Police Department's policy allows for six months of light duty *per incident.*

75.     Sergeant Taylor also unsuccessfully began trying to show that Ms. Compton's reports were deficient and started making follow-up calls on Ms. Compton's reports.   Although there were other co-workers who prepared reports under Sergeant Taylor's supervision, none of them were subjected to this kind of harassment, even when they committed errors in their work.

76.     Ms. Compton was told by other Officers that they had overheard Sergeant Taylor saying she was "*going to find anyway she could burn*" Ms. Compton, and she was seeking reasons why she could issue Ms. Compton a write-up.

77.     On February 11, 2015. Ms. Compton was forced to take off work because of stress from the harassment. by Sergeant. Taylor and the failure by the Police Department to remedy the situation.  Ms. Compton called out of her next five (5) scheduled shifts because she was too physically ill from the constant harassment and discrimination to return to work.

78.     On February 23, 2015, Ms. Compton requested a partial leave of absence.  Chief Valdez advised Ms. Compton that per policy, she was no longer allowed to work light duty and

that her partial leave request was being reviewed.  Chief Valdez advised Ms. Compton that she

did not need to call "out of work" every day until her partial leave request was approved.

79.     On February 27, 2015, Ms. Compton received an email from Deputy Chief

Davenport telling her that she had missed work four days in a row and not contacted anyone, and

per policy, if she missed a fifth day she would be considered as having resigned from her

position.  Ms. Compton responded saying she had still yet to receive direction regarding her

partial leave request, and was not resigning from her position.

80.     Pueblo discriminated against Ms. Compton by refusing to allow her to continue to

work light duty as an accommodation for her disability.  Male and other similarly situated

Officers were allowed to work extended light work duty beyond six months.

81.     Pueblo also discriminated against Ms. Compton by denying her promotion to

Sergeant based on her disability.  Ms. Compton was fully capable of performing the essential job

functions with a reasonable accommodation.

82.     On June 6, 2015, Ms. Compton's request for unpaid leave was granted.

83.     Ms. Compton has suffered extreme emotional distress and physical illness as

manifestations of the emotional distress as a result of the discrimination, harassment and

retaliation by Pueblo Police Department.

84.     In addition, Ms. Compton has suffered, and will continue to suffer, economic

damages and losses due to the conduct of Pueblo Police Department, including loss of earnings,

loss of future wages, loss of future career advancement, loss of benefits, loss of future benefits,

physical pain and suffering, medical expenses, out of pocket expenses, and statutory damages.

## FIRST CLAIM FOR RELIEF
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, 2000e-5
Harassment/Hostile Work Environment

85.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

86.    Plaintiff Brandee Compton, as a female employee, was subjected to Pueblo Police Departments' creation of a hostile work environment and harassment because of her sex.

87.    Plaintiff's gender was a determinative or motivating factor behind the conduct creating the hostile work environment.

88.    The conduct creating the hostile work environment was unwelcome and was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and had an adverse impact on Plaintiff's working environment.

89.    Pueblo Police Department knew or should have known of the harassment and hostile environment perpetrated by management and other employees, and failed to take immediate and appropriate remedial action.

90.    Plaintiff was performing her duties satisfactorily as a Corporal Police Officer. The City of Pueblo violated 42 U.S.C. § 2000(a)(1) by the conduct described herein.

91.    Plaintiff is entitled to recover damages for the harassment and hostile work environment described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000E-5.

92.    Plaintiff suffered economic and non-economic damages as a result of such harassment and hostile environment, including loss of wages, loss of future wages, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate her damages, loss of career advancement, and statutory damages.

93.     Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. § 200e-5(k).

**SECOND CLAIM FOR RELIEF**
C.R.S. §§24-34-306, 32-34-402
Harassment/Hostile Work Environment

94.     Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs of the Complaint as if set forth herein.

95.     Plaintiff Brandee Compton was subjected to harassment and a hostile work environment by her employer, the Pueblo Police Department, on account of her sex and disability.

96.     Sex and disability was a determinative or motivating factor behind the discrimination.

97.     Plaintiff was fully qualified for continued employment by the Pueblo Police Department.

98.     The Pueblo Police Department's treatment of Plaintiff was unwelcome and was so severe and pervasive that it altered the conditions of Plaintiff's employment and had an adverse impact on Plaintiff's working environment.

99.     The Pueblo Police Department knew or should have known of the harassment and hostile environment perpetrated by management and other employees, and failed to take immediate and appropriate remedial action.

100.    Plaintiff was performing her duties satisfactorily as a Corporal Police Officer.

101.    Pueblo Police Department condoned a hostile work environment and harassment and repeatedly and knowingly subjected the Plaintiff to this environment, including a pervasive pattern of blatant and offensive remarks about Plaintiff's sex and disability.

{00511240:6}

102.     The Pueblo Police Department violated C.R.S. §24-34-402(1)(a) by the conduct herein.

103.     Plaintiff suffered economic and non-economic damages as a result of the harassment and hostile work environment by the Pueblo Police Department, including loss of wages, loss of future wages, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate her damages, loss of future career advancement and statutory damages.

104.     Plaintiff is entitled to recover damages for the discriminatory conduct described herein pursuant to C.R.S. § 24-34-306 and the associated provisions of Parts 3 and 4 of Article 34 of Title 34, C.R.S.

### THIRD CLAIM FOR RELIEF
Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-2, 2000e-5)
Sexual Discrimination

105.     Ms. Compton incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

106.      Ms. Compton, as a female, was entitled to protections under the law, including protection from harassment based on sex and disparate treatment based on sex.

107.     Ms. Compton was treated differently than similarly situated male employees. This treatment included unfair criticism, disparagement, false accusations, failure to promote, increased sanctions and subjected to discrimination

108.     Ms. Compton was performing her duties satisfactorily as Corporal Patrol Officer at the time she was unfairly denied a promotion to Sergeant.

109.    Male employees similarly situated to Ms. Compton were not subjected to unfair criticism, disparagement, refusal to promote, false accusations, unfair sanctions and discrimination, as was Plaintiff.

106.    Male employees with less experience were promoted instead of Ms. Compton.

107.    Ms. Compton's sex was a motivating factor in Defendant's decision to unfairly deny her promotion.

108.    Defendant's conduct as described above constitutes discrimination on the basis of sex in violation of both federal and state statutes, including Title VII of the Civil Rights Act of 1964 as amended and C.R.S. § 24-34-402.

109.    Plaintiff has suffered damages, as described herein, on account of the sexual discrimination.

110.    Plaintiff is entitled to recover damages on account of the sexual discrimination, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, medical expenses, loss of future wages, loss of future benefits, loss of future career advancement, loss of out of pocket expenses incurred to mitigate her damages, and statutory damages.

111.    Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. § 2000e-5(k).

### FOURTH CLAIM FOR RELIEF
C.R.S. §§24-34-306, 32-34-402
Discrimination

112.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

113.    Ms. Compton, as a female, was entitled to protections under the law, including protection from harassment based on sex and disparate treatment based on sex.

114.    Plaintiff was treated differently than similarly situated male employees.  This treatment included unfair criticism, disparagement, false accusations, failure to promote, increased sanctions, and subjected to discrimination.

115.    Ms. Compton was performing her duties satisfactorily as Corporal Patrol Officer at the time she was unfairly denied a promotion to Sergeant.

116.    Male employees similarly situated to Ms. Compton were not subjected to unfair criticism, disparagement, refusal to promote, false accusations, unfair sanctions and discrimination, as was Plaintiff.

117.    Male employees with less experience were promoted instead of Ms. Compton.

118.    Ms. Compton's sex was a motivating factor in Defendant's decision to unfairly deny her promotion.

119.    Defendant's conduct as described above constitutes discrimination on the basis of sex in violation of both federal and state statutes, including Title VII of the Civil Rights Act of 1964 as amended and C.R.S. § 24-34-402.

120.    Plaintiff has suffered damages, as described herein, on account of the sexual discrimination.

121.    Plaintiff is entitled to recover damages on account of the sexual discrimination, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, medical expenses, loss of future wages, loss of future benefits, loss of future career advancement, loss of out of pocket expenses incurred to mitigate her damages, and statutory damages.

122.    The Pueblo Police Department violated C.R.S. §24-34-402(1)(a) by the conduct herein.

123.    Plaintiff is entitled to recover damages for the discriminatory conduct described herein pursuant to C.R.S. § 24-34-306 and the associated provisions of Parts 3 and 4 of Article 34 of Title 34, C.R.S.

**FIFTH CLAIM FOR RELIEF**
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-5
Sexual Harassment/Hostile Work Environment

124.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

125.    Plaintiff Brandee Compton was subjected to harassment by Pueblo Police Department on account of her sex while she was employed by The City of Pueblo.

126.    The sexual harassment was both objectively and subjectively offensive and severe.

127.    The sexual harassment was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and had an adverse impact on Plaintiff's working environment.

128.    The sexual harassment was unwelcome.  Plaintiff took reasonable steps to report the sexual harassment to the Pueblo Police Department, including Sergeant Shelly Taylor, Deputy Chief Troy Davenport, Police Chief Luis Velez, and the Union.

129.    The Pueblo Police Department failed to take reasonable actions to stop the sexual harassment despite knowing of the harassment.

130.    Plaintiff has suffered damages, as stated herein, as a result of the harassment.

131.    Plaintiff is entitled to recover damages caused by the sexual harassment, including lost wages, loss of benefits, emotional distress, physical pain and suffering, medical expenses,

loss of future wages, loss of future benefits, loss of out of pocket expenses incurred to mitigate her damages, loss of future career advancement, and statutory damages.

132.    Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. § 2000e-5(k).

## SIXTH CLAIM FOR RELIEF
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, 2000e-5
### Disparate Treatment

133.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

134.    Plaintiff Brandee Compton was subjected to disparate treatment by her employer, The City of Pueblo, on account of her sex.

135.    Plaintiff was treated differently than similarly situated male employees.  This treatment included being unduly scrutinized, unfair criticism, disparaged, subjected to discriminatory statements and treatment, false accusations, lack of advancement and termination.

136.    Other male employees were not subjected to the criticism, disparagement, false accusations, scrutinization, and discriminatory treatment for the same actions as Plaintiff.

137.    Plaintiff was fully qualified for continued employment by Pueblo Police Department.

138.    Pueblo Police Department violated 42 U.S.C. §2000(a)(1) by the conduct described herein.

139.    Plaintiff is entitled to recover damages for the discriminatory conduct described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

140.    Plaintiff suffered economic and non-economic damages as a result of such disparate  treatment by The City of Pueblo, including loss of wages, loss of future wages, loss of

benefits, loss of future benefits, emotional distress, physical pain and suffering, medical

expenses, loss of out of pocket expenses incurred to mitigate her damages, loss of future career

advancement and statutory damages.

141.    Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for

bringing this action pursuant to 42 U.S.C. §2000e-5(k).

**SEVENTH CLAIM FOR RELIEF**
Discrimination based on Disability
In Violation of the Americans with Disabilities Act
42 U.S.C. §12101 *et seq.*

142.    Plaintiff incorporates by reference the allegations contained in the preceding

paragraphs of the Complaint as if set forth herein.

143.    Ms. Compton is a qualified individual with a disability.  Ms. Compton has a

physical impairment that substantially limits one or more of her major life activities, including

but not limited to sitting and walking.

144.    Ms. Compton was fully capable of performing her essential job functions with a

reasonable accommodation.

145.    Ms. Compton notified the Pueblo Police Department of her disability.

146.    The Pueblo Police Department's refusal to make reasonable accommodations for

Ms. Compton's disability and refusal to engage in the interactive process with Ms. Compton

constitutes discrimination against Ms. Compton.

147.    Ms. Compton suffered adverse employment actions as a result of the Pueblo

Police Department's discrimination against persons with disabilities, including failure to

promote.

148.    Ms. Compton has suffered damages as stated herein as a result of the

discrimination based on disability by the Pueblo Police Department.

149.     Ms. Compton is entitled to recover damages caused by Defendant's discrimination, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, loss of future wages, loss of future benefits, loss of out of pocket expenses incurred to mitigate her damages and statutory damages.

150.     Ms. Compton is entitled to recover her reasonable attorney fees and costs for bringing this action pursuant to 42 U.S.C. § 12101 *et. seq.*

**EIGHTH CLAIM FOR RELIEF**
Discrimination based on Disability
In Violation of the Americans with Disabilities Act
C.R.S § 24-34-402

151.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

152.     Ms. Compton is a qualified individual with a disability.  Ms. Compton has a physical impairment that substantially limits one or more of her major life activities, including but not limited to sitting and walking.

153.     Ms. Compton was fully capable of performing her essential job functions with a reasonable accommodation.

154.     Ms. Compton notified the Pueblo Police Department of her disability.

155.     Pueblo Police Departments' refusal to make reasonable accommodations for Ms. Compton's disability and refusal to engage in the interactive process with Ms. Compton constitutes discrimination against Ms. Compton.

156.     Ms. Compton suffered adverse employment actions as a result of the Pueblo Police Department's discrimination against persons with disabilities.

157.     The Pueblo Police Department's conduct as described herein constituted a discriminatory and unfair employment practice in violation of C.R.S. § 24-34-402(1)(a).

{00511240:6}

158.     Ms. Compton has suffered damages as stated herein as a result of the discrimination based on disability.

159.     Ms. Compton is entitled to recover damages caused by Defendant's discrimination, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, loss of future wages, loss of future benefits, loss of out of pocket expenses incurred to mitigate her damages, loss of career advancement and statutory damages.

### NINTH CLAIM FOR RELIEF
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), 2000e-5
Retaliation

160.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth below.

161.     Plaintiff was subjected to retaliation for engaging in opposition to discrimination, in violation of 42 U.S.C. §2000e-3(a).

162.     Ms, Compton engaged in conduct in opposition to sex discrimination and harassment and otherwise exercised her statutory rights by filing charges of sex discrimination and retaliation against Deputy Chief Michael Bennett and by reporting multiple times to the Pueblo Police Department that she was discriminated against and harassed.

163.     In violation of both federal and state law, Defendant retaliated against Ms. Compton's protected conduct in opposing discrimination and exercising her statutory rights, including the placement of Michael Bennett on Ms. Compton's interview panel and at least twice unfairly denying Ms. Compton's promotion to Sergeant.

164.      Plaintiff suffered retaliation by her employer, the Pueblo Police Department on account of her complaints of discrimination and harassment.

165.     The Pueblo Police Department knowingly and willfully retaliated against Plaintiff for complaining about the discriminatory treatment and harassment.  The retaliation included false accusations and unduly scrutinization.

166.     The Pueblo Police Department violated 42 U.S.C. § 2000(a)(1) by the conduct described herein.

167.     Plaintiff suffered economic and non-economic damage as a result of such retaliatory treatment by Defendant, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, medical expenses, loss of future wages, loss of future benefits, loss of career advancement, loss of out of pocket expenses incurred to mitigate her damages, and statutory damages.

168.     Plaintiff is entitled to recover damages for retaliatory conduct described herein pursuant to 42 U.S.C. §2000e-5(k).

169.     Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. § 2000e-5(k).

## TENTH CLAIM FOR RELIEF
C.R.S. §§ 24-34-306, 24-34-4020
Retaliation

170.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth below.

171.     Plaintiff was subjected to retaliation for engaging in opposition to discrimination, in violation of 42 U.S.C. §2000e-3(a).

172.     Ms, Compton engaged in conduct in opposition to sex discrimination and harassment and otherwise exercised her statutory rights by filing charges of sex discrimination

and retaliation against Deputy Chief Michael Bennett and by reporting multiple times to the Pueblo Police Department that she was discriminated against and harassed.

173.    In violation of both federal and state law, Defendant retaliated against Ms. Compton's protected conduct in opposing discrimination and exercising her statutory rights, including the placement of Michael Bennett on Ms. Compton's interview panel and at least twice unfairly denying Ms. Compton's promotion to Sergeant.

174.    Plaintiff suffered retaliation by her employer, the Pueblo Police Department on account of her complaints of discrimination and harassment.

175.    The Pueblo Police Department knowingly and willfully retaliated against Plaintiff for complaining about the discriminatory treatment and harassment.  The retaliation included false accusations and unduly scrutinization.

176.    The Pueblo Police Department violated 42 U.S.C. § 2000(a)(1) by the conduct described herein.

177.    Plaintiff suffered economic and non-economic damage as a result of such retaliatory treatment by Defendant, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, medical expenses, loss of future wages, loss of future benefits, loss of career advancement, loss of out of pocket expenses incurred to mitigate her damages, and statutory damages.

178.    Plaintiff is entitled to recover damages for retaliatory conduct described herein pursuant to C.R.S. §§ 24-34-306 and 24-34-4020.

## ELEVENTH CLAIM FOR RELIEF
Punitive Damages

179.    The unlawful employment practices complained of and the actions of the Pueblo Police Department's was willful, wanton, intentional and with malice or with reckless

indifference to Ms. Compton's statutorily protected rights, entitling Ms. Compton to damages in the form of punitive to punish the Pueblo Police Department for its actions and to deter it, and others, from such actions in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandee Compton respectfully requests that the Court enter Judgment in her favor and against Defendants and award the following relief:

1.      Nonpecuniary damages, including but not limited to, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, injury to reputation and deprivation of civil rights.

2.      Pecuniary damages, including but not limited to, loss of earnings, loss of future earnings, loss of benefits, loss of future benefits, out of pocket expenses in an attempt to mitigate her losses, medical expenses and all other economic losses.

3.      Punitive damages.

4.      Back pay, front pay, and statutory penalties and damages.

5.      Prejudgment and post judgment interest as provided for by law.

6.      Attorneys' fees, costs and expenses of this action as provided for by law.

7.       Such other and further relief as the Court deems just and proper.

## 8.  JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 5th day of February, 2016.

Respectfully submitted,

**BERENBAUM WEINSHIENK, PC**

***Original signature on file at Berenbaum Weinshienk, PC***

s/ *Rosemary Orsini*

Rosemary Orsini
370 Seventeenth Street, Suite 4800
Denver, Colorado 80202
Telephone: (303) 592-8305
Facsimile: (303) 629-7610

Plaintiff's Address:

5301 Aramis Court
Pueblo, CO 81005

{00511240:6}